PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EMMIT J. MCHENRY,

*Petitioner-Intervenor,*

and

GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,

*Appellant,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

No. 11-1239

EMMIT J. MCHENRY,

*Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

No. 11-1366

Appeals from the United States Tax Court.
(Tax. Ct. No. 10-7568)

Argued: January 25, 2012

Decided: April 16, 2012

Before WILKINSON, NIEMEYER, and SHEDD,
Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson joined. Judge Shedd wrote an opinion concurring in Parts I, II.A., and III.

---

## COUNSEL

**ARGUED:** Gene C. Schaerr, WINSTON & STRAWN, LLP, Washington, D.C., for the Government of the United States Virgin Islands. Joseph Andrew DiRuzzo, III, FUERST ITTLEMAN, PL, Miami, Florida, for Emmit J. McHenry. Jennifer Marie Rubin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the Commissioner of Internal Revenue. **ON BRIEF**: Vincent F. Frazer, Attorney General, VIRGIN ISLANDS DEPARTMENT OF JUSTICE, St. Thomas, U.S. Virgin Islands; Peter N. Hiebert, Barry J. Hart, Andrew C. Nichols, Adele H. Auxier, WINSTON & STRAWN, LLP, Washington, D.C., for the Government of the United States Virgin Islands. Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, Kenneth L. Greene, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the Commissioner of Internal Revenue.

---

## OPINION

NIEMEYER, Circuit Judge:

The question presented in these appeals is whether the Tax Court abused its discretion in denying the motion of the Government of the United States Virgin Islands ("Virgin Islands") to intervene in this tax case, which was filed in response to a notice of deficiency issued by the IRS to Emmit McHenry for not paying U.S. income taxes. The IRS asserted that McHenry had participated in a tax avoidance scheme to take advantage of the lower taxes in the Virgin Islands. In seeking to intervene, the Virgin Islands asserted that McHenry was

but one of many identified by the IRS for tax enforcement under the U.S. tax laws pursuant to an IRS change of position in applying those laws and that a Tax Court decision against McHenry in the circumstances would chill entrepreneurs like McHenry from coming to the U.S. Virgin Islands, as they were encouraged to do under the Virgin Islands' Economic Development Program adopted pursuant to the authorization afforded by the U.S. tax laws.

The Tax Court has issued no rules of procedure for third-party intervention into Tax Court cases, but it is authorized, under Tax Court Rule 1(b), to prescribe such a procedure, "giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand." Tax Ct. R. Proc. 1(b). The Tax Court has never adopted a procedure such as is prescribed in Civil Rule 24(a) for intervention as a matter of right, and it was not prepared to do so in this case. And while it has applied Civil Rule 24(b) for permissive intervention and did indeed consider the Virgin Islands' motion by looking to that rule, it determined as a matter of discretion to deny permissive intervention. It concluded that intervention by the Virgin Islands would complicate McHenry's deficiency case and would introduce redundancy into the proceedings, explaining that the Virgin Islands would "have the right to introduce documentary evidence, call its own witnesses, and cross-examine witnesses of the other parties, which could result in delay."

We affirm the Tax Court's order denying intervention. Because Tax Court Rule 1(b) gives the Tax Court broad discretion in deciding whether and to what extent to follow Federal Rule of Civil Procedure 24 governing intervention and because Civil Rule 24 itself confers broad discretion on a trial court, we give great deference to a Tax Court's decision to deny intervention, reviewing only for a *clear* abuse of discretion. Because the Tax Court's concerns over the consequences of granting the Virgin Islands' motion to intervene are not

unreasonable, we do not find a clear abuse of the Tax Court's especially broad discretion.

I

To encourage economic development, Congress authorized the Virgin Islands to reduce its income taxes on "income from sources within the Virgin Islands or income effectively connected with the conduct of trade or business within the Virgin Islands." I.R.C. § 934(b)(1). Acting on this authorization, the Virgin Islands adopted an Economic Development Program to promote economic growth in the Virgin Islands by granting substantial tax benefits to those who do business in the Virgin Islands. To qualify under the program, a person must, among other things, be a bona fide resident of the Virgin Islands and must file tax returns with the Virgin Islands Bureau of Internal Revenue.

In 2000, Emmit McHenry sought to take advantage of the Virgin Islands tax benefits, and for the tax years 2001, 2002, and 2003, he filed tax returns with the Virgin Islands Bureau of Internal Revenue, paying taxes at the reduced amount payable under the Virgin Islands Tax Code. He did not file U.S. tax returns with the IRS for those three years.

In 2009, the IRS issued a deficiency notice to McHenry for the tax years 2001, 2002, and 2003, stating that he owed a total of $841,230 in U.S. taxes and $845,378 in penalties. The IRS had determined that McHenry was not a bona fide resident of the Virgin Islands during those tax years and that he had "participated in a tax avoidance scheme . . . which involved improperly claiming to be a resident of the [Virgin Islands] and superficially recasting income from sources within the United States as income from sources within the [Virgin Islands] or as income effectively connected to a trade or business within the [Virgin Islands] in order to inappropriately and invalidly claim a tax credit of 90% under the [Virgin Islands] economic development program." The deficiency

notice stated that "all transactions entered into pursuant to any arrangement" between McHenry and his Virgin Islands corporate entities would be "disregarded for federal tax purposes" because they were "devoid of economic purpose and economic substance and were engaged in for no purpose other than to avoid or evade tax." Finally, the IRS determined, based on the grounds given for the deficiency notice, that McHenry had been "required to file a U.S. individual income tax return with the [IRS] for tax years 2001 and 2002 and had failed to do so," a failure that was alleged to be due to fraud.

McHenry commenced this action in the Tax Court for a redetermination of the deficiency, making numerous arguments. Relevant to this appeal, he contended that he filed his tax returns for the years 2001, 2002, and 2003 with the Virgin Islands Bureau of Revenue and that the IRS's effort now to assess deficiencies were time barred by the three-year statute of limitations set forth in I.R.C. § 6501(a). Section 6501(a) provides that taxes imposed by the Internal Revenue Code "shall be assessed within 3 years after the return was filed." McHenry claimed that his Virgin Islands filings commenced this limitations period and that the IRS was therefore barred from pursuing him for the tax years in question. The IRS contended, however, that because McHenry did not file returns *with the IRS* for the tax years 2001, 2002, and 2003, the statute of limitations has not yet begun to run.

The Virgin Islands filed a motion to intervene in the Tax Court proceedings because the IRS's current construction and application of I.R.C. § 6501(a) reverses the IRS's earlier internal understanding of the provision, under which the IRS considered the filing of a Virgin Islands tax return to commence the running of the limitations period under I.R.C. § 6501(a). The Virgin Islands claimed that the IRS's new position "threatens the V.I. Government's taxing autonomy and fiscal sovereignty, and impairs the Bureau's [Virgin Islands Bureau of Internal Revenue] ability to administer the tax laws of the Virgin Islands." The change in course, it

argued, undermines the reasonable expectations of individual Virgin Islands taxpayers in filing their tax returns with the Virgin Islands Bureau of Internal Revenue. It asserted that McHenry is just one of many taxpayers adversely affected by "the IRS's unreasonable position on the statute of limitations." To support intervention procedurally, the Virgin Islands invoked Tax Court Rule 1(b), which authorizes the Tax Court to apply the Federal Rules of Civil Procedure, including Rules 24(a)(2) (Intervention of Right) and 24(b)(2) (Permissive Intervention).

The Tax Court denied the Virgin Islands' motion to intervene by order dated March 2, 2011, stating:

> The issues in this case are similar to those presented in *Appleton v. Comm'r*, 135 T.C. 461 (2010), filed November 1, 2010, wherein the Court declined to permit the Virgin Islands to intervene. We believe that because intervention by the Virgin Islands could result in trial complications, and for other reasons set forth in *Appleton*, intervention is not the method which the Virgin Islands should use to express its position.

In *Appleton* (hereafter, "*Appleton I*"),[1] the Tax Court reasoned that allowing the Virgin Islands to intervene "solely to make

---

[1] *Appleton I* was later reversed on appeal by a 2-1 decision of the Third Circuit. *See Appleton v. Comm'r*, 430 F. App'x 135 (3d Cir. 2011) ("*Appleton II*"). The Virgin Islands urges that we follow *Appleton II* here, while the IRS argues that *Appleton II* was incorrectly decided in concluding that the Virgin Islands "administers" a statute, order, or regulation involved in this Tax Court proceeding and in concluding that applying Civil Rule 24(b)(3) required the Tax Court to include a finding of "undue" delay and prejudice. *See* IRS Announcement Relating to *Appleton*, 2011-47 I.R.B. 789 (2011) (noting that the IRS was not acquiescing in the Third Circuit's opinion). The IRS also notes that *Appleton II* never addressed intervention as a matter of right. *See also Coffey v. Comm'r*, 663 F.3d 947 (8th Cir. 2011) (following *Appleton II*).

an argument that petitioner has already identified as a matter central to his case would introduce redundancy to the proceeding." 135 T.C. at 470. Further, the Tax Court noted that if it were to grant the motion to intervene, the Virgin Islands would "have the right to introduce documentary evidence, call its own witnesses, and cross-examine witnesses of the other parties. Such participation, as a practical matter, could result in trial complications as well as delay the resolution of the issue in which movant asserts an interest." *Id.* at 470-71.

From the Tax Court's order, the Virgin Islands filed this appeal, arguing that the Tax Court abused its discretion in denying its motion to intervene.

## II.  Permissive Intervention

The Virgin Islands contends first that the Tax Court abused its discretion in denying permissive intervention under Federal Rule of Civil Procedure 24(b)(2) by improperly construing the rule. It argues that the Tax Court "never seriously considered the question" of "whether intervention would cause '*undue*' delay," and that the Tax Court inappropriately "imposed a requirement that the [Virgin Islands] had to show 'that its participation as a party [was] *necessary* to advocate for an unaddressed issue.'"

The IRS contends that the Virgin Islands does not even qualify for permissive intervention because it was unable to satisfy the requirement of Rule 24(b)(2) that the Virgin Islands "*administer* the statutory provisions implicated in the statute-of-limitations issue," which forms the basis of McHenry's defense. The IRS also argues that the Tax Court "correctly found that the Virgin Islands seeks to raise an issue that is a cornerstone of the taxpayer's defense and on which the Virgin Islands and the taxpayer completely agree, and that allowing the Virgin Islands to intervene would unduly delay the case." Finally, the IRS urges that we defer to the broad discretion given to the Tax Court to determine and apply its

own procedures under Tax Court Rule 1(b), as well as the broad discretion given to district courts under Civil Rule 24(b). It concludes that the Tax Court acted well within this double layer of broad discretion in denying permissive intervention.

The Tax Court's rules make no provision for intervention by third persons in Tax Court proceedings, whether permissive or as of right, and the Federal Rules of Civil Procedure are not applicable to Tax Court proceedings. *See* I.R.C. § 7453 ("[T]he proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe"); *Lasky v. Comm'r*, 235 F.2d 97, 98 (9th Cir. 1956) *aff'd* 352 U.S. 1027 (1957). Tax Court Rule 1(b), however, grants the Tax Court broad discretion to borrow procedures from the Federal Rules of Civil Procedure. Rule 1(b) provides:

> These rules govern the practice and procedure in all cases and proceedings before the Court. Where in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand.

Relying on Rule 1(b), the Tax Court has concluded that it, "like other Federal courts, may permit intervention by third parties in those unique situations where the ends of justice so require." *Estate of Proctor v. Comm'r*, T.C. Memo. 1994-208, 1994 WL 184400, at *9 (1994). And when applying Civil Rule 24(b), the court has delineated the manner in which the Tax Court will assimilate the rule:

> [I]f the moving party has a stake in the outcome of the litigation before the Court which cannot be ade-

quately protected by the parties currently before the Court, and permitting intervention will lead to a more complete presentation of the legal issues to be decided, we are more inclined to grant the party's motion to intervene. Motions to intervene have been denied where the moving party fails to demonstrate to the Court that the party-petitioner was taking a position that was contrary to the moving party's interests in the litigation before the Court.

*Estate of Proctor*, 1994 WL 184400, at *9. Thus, while employing Civil Rule 24(b) for Tax Court proceedings, the Tax Court takes into account "[t]he nature of the intervenor's status in light of the Tax Court's limited jurisdiction." *Estate of Smith v. Comm'r*, 77 T.C. 326, 329 (1981).

In sum, the Tax Court does apply its Rule 1(b) to allow permissive intervention, giving particular weight to Civil Rule 24(b), but it only applies Civil Rule 24(b) when (1) "the ends of justice so require"; (2) the moving party has a stake in the outcome of the Tax Court litigation "which cannot be adequately protected by the parties currently before the court"; and (3) "permitting the intervention will lead to a more complete presentation of the legal issues to be decided." *Estate of Proctor*, 1994 WL 184400 at *9.

Our review of any court's order denying permissive intervention under Civil Rule 24(b) is "particularly deferential," *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999), and a challenge to the court's discretionary decision to deny leave to intervene must demonstrate a "*clear* abuse of discretion in denying the motion," *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 471 (5th Cir. 1984) (emphasis added); *see also Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 142 (1944) ("The exercise of discretion in [denying permissive intervention] is not reviewable by an appellate court unless *clear* abuse is shown" (emphasis added)); *South Dakota v. U.S. Dep't of*

*Interior*, 317 F.3d 783, 787 (8th Cir. 2003) ("[W]e grant great deference to the district court's decision to deny a Rule 24(b) motion, reviewing it only for a *clear* abuse of discretion" and the "[r]eversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent" (emphasis added)); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 7C *Federal Practice and Procedure* § 1923, (3d ed. 2007).

With these principles in hand, we turn first to whether the Virgin Islands demonstrated to the Tax Court that it administers a statute or regulation on which McHenry's limitations defense is based, as required by Civil Rule 24(b)(2), and then to the Tax Court's consideration of whether the Virgin Islands demonstrated that its intervention would not cause undue delay or prejudice, as required by Civil Rule 24(b)(3).

A

Civil Rule 24(b)(2) authorizes a court to grant a governmental officer or agency permissive intervention if a party's claim or defense is based on a statute or regulation "administered by the officer or agency." Fed. R. Civ. P. 24(b)(2). The IRS contends that the Virgin Islands has totally failed to satisfy this requirement, as it does not administer I.R.C. § 6501(a), which establishes the statute of limitations on which McHenry bases his defense.

The Virgin Islands does not claim that it directly administers I.R.C. § 6501(a). But it argues that it has an interest in the IRS's enforcement of § 6501(a) which is sufficient to satisfy the "administer" requirement of Civil Rule 24(b)(2). It argues:

> The [Virgin Islands'] interest is based on its desire to protect the Virgin Islands' tax structure, or more accurately, the Economic Development Program. In this sense, while the issue that concerns both the [Virgin Islands] and McHenry is the same, namely,

the statute of limitations, the Virgin Islands' interest in the proceedings is certainly different from McHenry's interest in dealing with this one-time tax adjustment.

\* \* \*

In cases like [McHenry's]—which will turn largely on the interpretation of the Economic Development Program regulations, [U.S. Tax] Code Sections 932 and 934, and the Statute of Limitations in [U.S. Tax] Code Section 6501—the [Virgin Islands'] interest in how the courts interpret these laws is yet another powerful factor weighing in favor of permissive intervention.

In short, the Virgin Islands argues that the IRS's interpretation of the U.S. Tax Code's statute of limitations affects the enforcement of I.R.C. §§ 932(c) and 934, in which it has a direct interest, inasmuch as § 934 authorizes the Virgin Islands to reduce taxes as part of its Economic Development Program.

To be clear, however, I.R.C. § 6501 is a provision of the U.S. Tax Code, establishing a statute of limitations for imposing U.S. income tax assessments, and in no manner does it confer administrative responsibilities on the Virgin Islands. Similarly, I.R.C. § 932(c) is a provision of the U.S. Tax Code that provides that bona fide residents of the Virgin Islands who file their tax returns with the Virgin Islands need not include the gross income stated on their Virgin Islands tax returns in any United States gross income. Finally, I.R.C. § 934 is a provision of the U.S. Tax Code, which authorizes the Virgin Islands to reduce taxes from sources within the Virgin Islands and on income effectively connected with the conduct of a trade or business within the Virgin Islands, thus enabling the creation of the Virgin Islands' Economic Development Program. While it might be true that these provisions

of the United States Tax Code impact the policies of the Virgin Islands in the same way that U.S. tax law impacts many state laws, the Virgin Islands cannot legitimately claim to be administering any of these provisions of the U.S. Tax Code.

To satisfy the requirement that it *administers* the statute on which McHenry bases his defense, *i.e.*, I.R.C. § 6501(a), the Virgin Islands must demonstrate that it manages, directs, or supervises the application of I.R.C. § 6501(a). *See Lopez v. Monterey Cnty.*, 525 U.S. 266, 278 (1999) (defining "administer" as "to manage the affairs of," "to direct or superintend the execution, use, or conduct of," "to manage (affairs, a government, etc.); have executive charge of," "[t]o manage or conduct"). Yet, the Virgin Islands does not, and cannot, claim that it has this type of control over these U.S. Tax Code provisions, or over any other U.S. Tax Code provisions. Rather, it only claims that it has *an interest* in the IRS's policies in enforcing the U.S. Tax Code in that the Virgin Islands disagrees with the IRS's change in policy, which has affected its Economic Development Program. But claiming an interest arising from this disagreement with the IRS over enforcement of the U.S. Tax Code is quite distinct from claiming that the Virgin Islands *administers* any provision of the U.S. Tax Code.

Indeed, proof of the matter is revealed by the IRS's reaction to McHenry's alleged tax evasion techniques. As numerous persons were taking advantage of the Virgin Islands Economic Development Program to avoid U.S. taxes, the IRS and Congress, *not the Virgin Islands*, acted in their respective capacities as administrators of the U.S. Tax Code—particularly I.R.C. §§ 932, 934, and 6501—to alter the requirements and make evasion of U.S. taxes more difficult. In 2004, the IRS issued notice 2004-45, 2004-2 C.V. 33 (2004), entitled "Meritless Filing Position Based on Sections 932(c) and 934(b)," which it cited in the deficiency sent to McHenry. Notice 2004 notified taxpayers "that certain promoters are advising taxpayers to take highly questionable, and

in most cases, meritless positions . . . in order to avoid U.S. taxation and claim a tax benefit under the laws of United States Virgin Islands." The Notice stated that "the Service intends to challenge these positions in appropriate cases" and "impose civil penalties on taxpayers or persons who participated in the promotion or reporting of these positions." Further, to combat this type of tax evasion, Congress, in 2004, (1) added I.R.C. § 937(a), which provided a stricter definition of "bona fide residency" of U.S. possessions; (2) added § 937(b), which imposed more stringent rules for determining whether income is derived from or connected with the conduct of business in a territory such as the Virgin Islands; and (3) changed the residency requirement in § 932(c)(4) to read "resident . . . during the *entire taxable* year," rather than "resident . . . *at the close* of the taxable year." American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 908 (2004). These 2004 changes to the U.S. Tax Code were accomplished by the IRS and Congress, not by the Virgin Islands.

The Third Circuit in *Appleton II*, on which the Virgin Islands relies heavily, stated conclusorily that Rule 24(b)(2)'s requirement that the Virgin Islands administer the statute at issue "appears to be satisfied, as Appleton's tax assessments are based on an income calculation which takes into account credits created pursuant to 26 U.S.C. § 934, under the [Virgin Islands' Economic Development Program]." 430 F. App'x at 138. The first flaw in this analysis, however, is that the Virgin Islands did not move to intervene in the *Appleton I* case or in this case on the calculation of the taxpayer's Virgin Islands tax assessment under I.R.C. § 934 and the Virgin Islands' Economic Development Program, nor did it move to intervene on the question of the taxpayer's Virgin Islands residency or income classification under § 932(c). Rather, the Virgin Islands moved to intervene *solely* on the issue of whether the statute of limitations applicable to U.S. tax liability, I.R.C. § 6501(a), provides the taxpayer a defense to the asserted tax deficiency. The Virgin Islands, however, does not "administer" I.R.C. § 6501(a), which is part of the U.S. Tax

Code and administered solely by the IRS. And *Appleton II* never addressed the question of whether the Virgin Islands administers I.R.C. § 6501(a), the provision at issue here. Most certainly, it could not have concluded that the Virgin Islands administered that statute, as required under Civil Rule 24(b)(2).

Moreover, we conclude that the Third Circuit was incorrect in assuming that the tax credits claimed by Appleton were "credits created pursuant to I.R.C. § 934." *Appleton II*, 430 F. App'x. at 138. Instead, they were credits created *by the Virgin Islands* for taxes payable to the Virgin Islands pursuant to the Economic Development Program and the Virgin Islands' tax laws. Those Virgin Islands credits were in no way implicated in Appleton's statute of limitations defense under U.S. tax laws, nor are they in McHenry's defense. Section 934 simply defined the limitations for purposes of U.S. taxation to which those credits had to adhere.

While we can recognize that the IRS's interpretations of the U.S. tax laws that it administers may have an impact on the Virgin Islands and its Economic Development Program, the evidence of this impact in no way supports a claim that the Virgin Islands *administers* what are indisputably provisions of the U.S. Tax Code.

Accordingly, we agree with the IRS that Virgin Islands has not satisfied this basic and essential requirement of permissive intervention by a government officer or agency, as required by Civil Rule 24(b)(2).

B

Even as it failed to satisfy Civil Rule 24(b)(2), the Virgin Islands nonetheless contends that the Tax Court abused its discretion in denying Virgin Islands' motion to intervene also because the Tax Court misconstrued or misapplied the criteria

to be considered for permissive intervention, as stated in Civil Rule 24(b)(3). That rule provides:

> In exercising its discretion [on a motion for permissive intervention], the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

This language is directive, instructing courts to *consider* the factors of undue delay and prejudice in exercising their discretion about permissive intervention, but findings on those factors are not determinative of or sufficient to decide a permissive intervention motion. Regardless of what a court concludes in considering these factors, it may still either grant or deny intervention.

The Virgin Islands elevates Civil Rule 24(b)(3) to serve as a gateway to intervention and, consistent with that approach, focuses on whether the Tax Court specifically found "*undue* delay" *in haec verba*. Because the Tax Court did not use the term "undue" and, in addition, because it considered whether the Virgin Islands' intervention was "*necessary*" to the presentation of McHenry's defense—a term not contained in Civil Rule 24(b)(3)—the Virgin Islands argues that the Tax Court misapplied Rule 24(b)(3) and therefore abused its discretion.

In making this argument, the Virgin Islands focuses almost entirely on whether the Tax Court used the word "undue," not whether the Tax Court was substantively reacting to a possibility of undue delay. We decline, however, to impose a requirement that a district court or, in this case, the Tax Court, must, in making the discretionary decision under Rule 24(b)(2), use particular words or phrases. The Virgin Islands has cited no case prior to *Appleton II* where a court of appeals, reviewing the denial of permissive intervention, imposed the kind of strict procedural and semantic requirements on a district court it asks us to impose here.

In fact, a review of other courts of appeals' decisions reveals just the opposite, a profound reluctance to curb a district court's discretion under Rule 24(b) based on technicalities or semantics. *See, e.g.*, *South Dakota*, 317 F.3d at 787-88 (upholding a denial of permissive intervention because the district court "articulated a legitimate reason" for denying the motion even though it "did not determine whether the proposed intervention would cause undue delay or prejudice"); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (noting the "exceedingly deferential" standard of review and upholding the district court's denial of permissive intervention because of "delay"); *New York News Inc. v. Kheel*, 972 F.2d 482, 487 (2nd Cir. 1992), *affirming New York News Inc. v. Newspaper & Mail Deliverers' Union of N.Y.*, 139 F.R.D. 291 (S.D.N.Y. 1991) (finding the district court had "properly considered" "undue delay" even though the district court never used the word "undue"); *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) (finding undue delay even though the district court did not use those words because the issues raised by the prospective intervenor were "collateral" to the litigation); *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) ("Appellant urges reversal because the district court apparently did not consider whether intervention will unduly delay or prejudice the rights of other parties . . . . Although the trial court did not specifically articulate its reasons for denying permissive intervention, we can find no abuse of discretion in the court's denial of [the] motion").

In reviewing substantively whether the Tax Court considered undue delay, we note at the outset some ambivalence in the Virgin Islands' position. In its motion to intervene, it indicated that it was filing a motion to intervene because of its "vital interest in the proper resolution of *one key aspect* of the dispute: the IRS's position that the usual 3-year statute of limitations for assessing tax under Section 6501(a) of the Internal Revenue Code of 1986 . . . does not apply to income tax returns filed with the Virgin Islands government's Bureau of

Internal Revenue." (Emphasis added). It assured the Tax Court that it had no intention of "delaying the resolution of this case" and indicated an intent not "to put on any of its own evidence." *In the same motion*, however, the Virgin Islands also indicated that while it "concurs fully with McHenry's position on the statute of limitations issue, and does not take issue with any of his other positions," its interests "cannot be adequately represented by McHenry . . . as he is not responsible for the public welfare, the effectiveness of the Economic Development Program, the Bureau's administration of the mirror code or, most importantly, the integrity of the Virgin Islands' government fisc." It then argued:

> Unless it becomes a litigant, the Virgin Islands will have no right to present evidence of the many Virgin Islanders who may face the threat of double taxation or other harms, or of the cost to the Virgin Islands' economy of the IRS's novel and unprecedented interpretation of the Section 6501(c) statute of limitations as applied to returns received and processed by the Bureau pursuant to Section 932(c).

In its brief on appeal, the Virgin Islands has confirmed its purpose for seeking intervention to be able "to demonstrate, through appropriate evidence, the actual workings of its tax administration system or the injury to scores of citizens," as well as "to present evidence *showing the harm to the economy of the Virgin Islands* caused by the IRS's capricious rule changes." (Emphasis added).

Thus, on the one hand, it has promised not to present evidence to delay the case, but on the other, it has forecast a Tax Court deficiency proceeding far broader than would have been required to resolve the issue of McHenry's U.S. income tax deficiency.

The Tax Court, however, appears to have dealt with both arguments, finding neither persuasive. It first pointed out that

McHenry, the taxpayer, will fully be able to present the statute of limitations argument during the course of proceedings, and thus "for movant to participate in this case as a party solely to make an argument that the petitioner has already identified as a matter central to his case would introduce a redundancy into the proceedings." But then it also recognized that if the motion to intervene were granted, the Virgin Islands would "become a party to the proceeding in this Court and have the right to introduce documentary evidence, call its own witnesses, and cross-examine witnesses of the other parties. Such participation, as a practical matter, could result in *trial complications* as well as *delay* the resolution of the issue in which the movant asserts an interest." (Emphasis added).

While the Tax Court may not have used the word "undue," there can be no doubt that it was most concerned with undue delay based on the Virgin Islands' forecast if it were permitted to intervene. In its motion to the Tax Court, the Virgin Islands' core argument rested on its view that McHenry could not adequately protect the Virgin Islands' interests in protecting its Economic Development Program and "in the public welfare."

Moreover, the Virgin Islands attached to its motion to intervene several documents defining the scope of what it intended to show, which included an affidavit detailing the type of evidence that it would likely introduce. In the affidavit, the Chief Executive Officer of the Economic Development Authority related how, citing statistics, the success of the program has been affected by the IRS's enforcement of the U.S. Tax Code. He indicated that as a result, "many economic development program participants have left the U.S. Virgin Islands and returned to the United States, and many more potential business owners have been deterred from participating all together." Indeed, he stated that new applications submitted to the Economic Development Commission fell from 74 in 2003 to 21 in 2005 and to 12 in 2009.[2] Also attached to the motion

---

[2]As the dissent in *Appleton II* recognized, this decline also followed Congress' 2004 alterations to the Tax Code and the IRS's efforts to curb

to intervene were documents outlining the historical cooperative efforts between the Virgin Islands and the IRS, including an implementation agreement signed in 1987. In short, he addressed points that McHenry would not make and that would substantially expand the scope of the tax case.

Thus, the Tax Court knew that as a party, the Virgin Islands would likely introduce documentary evidence, call its own witnesses, and cross-examine witnesses of the parties on issues not before the court, thus introducing "trial complications as well as delay" to the resolution of the statute of limitations defense raised by McHenry. The Tax Court justifiably recognized the differing interests of McHenry and the intervening party to conclude that complications and delay would result. These are the core considerations delineated for consideration by Rule 24(b)(3). On this point, we agree with the dissent's observation in *Appleton II*:

> Although it did not use the precise phrases "undue delay" and "prejudice," the Tax Court concluded that the [Virgin Islands'] intervention would result in just that. Thus, a careful reading of the Tax Court's opinion refutes the majority's conclusion that "[t]here is no support for the notion that any delay here would be 'undue,' or that the [Virgin Islands'] arguments . . . would prejudice . . . the IRS." . . . [I]t concluded that the redundancy, complications, and delay arising from the [Virgin Islands'] intervention would be undue, and would prejudice the IRS.

*Appleton II*, 430 F. App'x at 139-40 (Ambro, J., dissenting).

Of course, if the Virgin Islands were only to advocate McHenry's narrow position, without complicating or delaying

---

the use of the Virgin Islands as a tax haven and could easily be attributable to the effectiveness of the congressional reforms at countering such tax evasion. *See Appleton II*, 430 F. App'x at 140 (Ambro, J., dissenting).

the trial, as it suggested in the early portion of its motion to intervene, then the Virgin Islands' intervention would not be necessary to a fair and complete adjudication of McHenry's deficiency and would therefore simply be redundant, also an observation made by the Tax Court.

The Virgin Islands criticizes this "necessity" observation, suggesting that it is a consideration beyond that stated in Rule 24(b)(3). But it fails to recognize that the observation is simply another legitimate factor adopted by the Tax Court in considering the desirability of permitting intervention. *See Estate of Proctor*, 1994 WL 184400, at *9.

We conclude that the Tax Court's concerns were reasonable, and in such circumstances we defer to its especially broad discretion, given at two levels under Tax Court Rule 1(b) and Civil Rule 24(b). The Tax Court was justifiably concerned about the transformation of a garden variety tax deficiency case, in which the court would have to decide a statute of limitations issue, into a policy battle between the Economic Development Authority of the Virgin Islands and the IRS. As the Supreme Court has instructed with respect to 24(b), we must not disturb the Tax Court's ruling unless there is a *clear* abuse of discretion. *See Allen Calculators*, 322 U.S. at 142. In this case, we do not so conclude and therefore affirm the Tax Court's order denying intervention.

### III.    Intervention of Right

The Virgin Islands also contends that the Tax Court abused its discretion "in refusing to order *mandatory* intervention" by "constructing the [Virgin Islands'] interest in narrow, formal terms." Virgin Islands asserts that it "will be impaired in protecting [its economic] interests if it cannot intervene in this litigation."

The IRS contends that the Virgin Islands lacks standing to intervene as a matter of right, as provided in Civil Rule

24(a)(2), because it is "neither named in a deficiency notice nor has a specific statutory right to intervene in a deficiency proceeding, in light of the Tax Court's limited jurisdiction." In addition, the IRS contends that the Virgin Islands does not assert an interest in McHenry's lawsuit that is direct insofar as it has "not demonstrated that its hypothetical interest would be harmed by a ruling in favor of the Commissioner."

The Tax Court rejected the Virgin Islands' argument that it was entitled, as a matter of right, to intervene under Civil Rule 24(a)(2), giving as its reasons those set forth in *Appleton I*. In *Appleton I*, the Tax Court observed first that it "has never recognized intervention of a third party as a matter of right pursuant to [Federal Rule of Civil Procedure] 24(a)(2)." 135 T.C. at 466. Moreover, it continued, it was not deciding whether Civil Rule 24(a) was even applicable to proceedings in the Tax Court because Virgin Islands did not make its case that it even qualified for the right to intervene as afforded by Civil Rule 24(a)(2). *See id.* at 466-67. The Tax Court reasoned that the Virgin Islands' interest in the taxpayer's deficiency proceeding was not "direct, substantial, and legally protectable" and that the Virgin Islands' *general economic interest* was simply insufficient. *Id.* at 468. It explained:

> Resolution of the 3-year period of limitations issue will not undermine [Virgin Islands'] taxing authority or discourage legitimate economic development in the Virgin Islands pursuant to [Virgin Islands' Economic Development Program]. Regardless of the outcome of the 3-year period of limitations issue, [the Virgin Islands] will still retain the authority to offer and administer its economic development program.

*Id.*

Tax Rule 1(b) provides that the Tax Court "*may prescribe*" the rules and procedures applicable to Tax Court proceedings

and requires only that the Court give weight to the Civil Rules "to the extent that they are suitably adaptable to govern the matter at hand." As far as we can determine, the Tax Court has never prescribed a procedure for intervention as a matter of right and has never applied Civil Rule 24(a)(2) to authorize a non-taxpayer third party to intervene as of right in a tax deficiency proceeding.

While the Virgin Islands does not challenge the Tax Court's exercise of discretion in refusing to prescribe Civil Rule 24(a)(2) as applicable to a Tax Court proceeding, were it to have attempted to demonstrate an abuse of discretion, it would be faced with the Tax Court's own perception of its limited jurisdiction. Only the taxpayer named in a deficiency notice has a right to petition for redetermination in the Tax Court under I.R.C. § 6213(a). *See Cincinnati Transit, Inc. v. Comm'r*, 55 T.C. 879, 882-83 (1971), *aff'd*, 455 F.2d 220 (6th Cir. 1972). Thus, the Virgin Islands would have to demonstrate the error in the Tax Court's observation that a non-taxpayer, governmental entity may never have a "right" to intervene in a tax deficiency proceeding in the Tax Court. This it has not done, and we have found no authority to support the Virgin Islands' position.

But even moving beyond that issue, we would not, in any event, be authorized to mandate Tax Court procedure to govern intervention of right even if we thought it would be useful. That is left exclusively to the Tax Court. *See* I.R.C. § 7453.

In addition, the Tax Court indicated that it was not even faced with the decision of whether to look to Civil Rule 24(a)(2) because the Virgin Islands failed to demonstrate that it qualified under that rule for intervention as a matter of right. We agree with that conclusion also.

Civil Rule 24(a)(2) mandates that a court "must permit anyone to intervene" if the party is "so situated that disposing of the action may as a practical matter impair or impede the

movant's ability to protect its interest, unless the existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In light of our discussion above, in which we noted the limited nature of the Tax Court proceeding and the broader and much different nature of the interest that the Virgin Islands has sought to vindicate, we agree with the Tax Court that the Virgin Islands cannot demonstrate that resolution of McHenry's statute of limitations defense will impede the Virgin Islands' ability to protect its interests. No matter what the outcome of the tax deficiency case, the Virgin Islands will retain the same authority to administer its Economic Development Program, and any views it has on the IRS's interpretation of the U.S. Tax Code can easily be expressed in an amicus brief, which the Tax Court has indicated it will allow, or in some other forum more suited to such policy arguments.

In sum, we affirm the Tax Court's decision denying the Virgin Islands' motion to intervene as a matter of right.

## IV

The Tax Court in this case is faced with McHenry's petition for redetermination of the U.S. income tax deficiency issued to him by the IRS, and McHenry has based his primary defense on the U.S. Tax Code's statute of limitations for making tax assessments, stated in I.R.C. § 6501(a). That issue will be determined by when the statute of limitations begins to run. The IRS asserts that it has not yet begun to run because, under § 6501(a), the three-year limitations period begins to run from when the taxpayer files his return, and McHenry has not yet filed U.S. tax returns for the years 2001, 2002, and 2003. McHenry argues that while he did not file U.S. tax returns with the IRS for the years in question, he did file returns with the Virgin Islands Bureau of Internal Revenue, and that the Virgin Islands' filing commences the running of the limitations period under I.R.C. § 6501(a).

This is a limited legal issue that will be resolved within the jurisdiction of the Tax Court, according to U.S. tax law.

Claiming that the IRS enforcement against McHenry is part of a larger "war" between the IRS and the Virgin Islands' Economic Development Authority, the Virgin Islands seeks to wage this war in a limited deficiency proceeding by intervening to present its evidence about the IRS's policies and practices, about how they have changed, and about how they adversely affect the Virgin Islands' economic development. Undoubtedly, if allowed to intervene, the Virgin Islands would transform the deficiency case into some proceeding far larger, far more complex, and far more protracted. In these circumstances, we conclude that the Tax Court acted well within its broad discretion to deny Virgin Islands' motion.

But we note that the Virgin Islands is not without a medium for communicating its concerns to the Tax Court and the IRS. Apart from traditional political avenues, the Virgin Islands has a right to participate as an amicus. In *Appleton I*, the Tax Court noted that it would "permit [the Virgin Islands] to file an amicus brief in order to enable [the Tax Court] to view the matter from its perspective." 135 T.C. at 471. And the Tax Court adopted *Appleton I* as its reasons for denying the Virgin Islands' motion in this case. Numerous cases support the proposition that allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention. *See Ruthardt v. United States*, 303 F.3d 375, 386 (1st Cir. 2002); *Mumford Cove Ass'n v. Town of Groton*, 786 F.2d 530, 535 (2d Cir. 1986); *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984); *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1225 (6th Cir. 1975).

For the reasons given, we affirm the Tax Court's order of March 2, 2011, denying the Virgin Islands' motion to intervene.

*AFFIRMED*

SHEDD, Circuit Judge, concurring:

I concur in Parts I, II.A., and III of the majority opinion. I would not reach the issue decided in Part II.B.