Filed 3/8/24  Construction Employers Assn. v. Cal. Dept. of Industrial Relations etc. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CONSTRUCTION EMPLOYERS ASSOCIATION et al., | C097709 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2021-80003714-CU-WM-GDS) |
| v. | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT et al., | |
| Defendants and Respondents; | |
| CALIFORNIA STATE PIPE TRADES JOINT APPRENTICESHIP COMMITTEE et al., | |
| Movants and Appellants. | |
| THE LABORERS TRAINING AND RETRAINING TRUST OF SOUTHERN CALIFORNIA et al., | C097709 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2021-80003715-CU-WM-GDS) |
| v. | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT et al., | |
| Defendants and Respondents; | |

1

CALIFORNIA STATE PIPE TRADES JOINT
APPRENTICESHIP COMMITTEE et al.,

Movants and Appellants.

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC., et al. | C097709 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2021-80003735-CU-WM-GDS) |
| v. | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT et al., | |
| Defendants and Respondents; | |
| CALIFORNIA STATE PIPE TRADES JOINT APPRENTICESHIP COMMITTEE et al., | |
| Movants and Appellants. | |

In this appeal we consider whether a group of apprentices and apprenticeship programs should have been granted leave to intervene in three related lawsuits challenging the validity of regulations pertaining to the employment of registered apprentices on public works projects. The movant-appellants (Movants) contend that the trial court should have granted their motion for mandatory or permissive intervention under Code of Civil Procedure section 387, subdivision (d)(1)(B) or (d)(2).[1]

We conclude the trial court properly denied mandatory intervention because Movants failed to show they were not adequately represented by the existing parties. We further conclude the trial court was within its discretion to deny permissive intervention

---

[1]     Undesignated section references are to the Code of Civil Procedure.

on the ground that the reasons for intervention were outweighed by the rights of the existing parties to conduct the litigation on their own terms. We therefore affirm the order denying intervention.

LEGAL BACKGROUND

In general, California's prevailing wage law requires that workers employed on public works projects be paid not less than the prevailing rate of wages for work of a similar character in the locality in which the public work is performed. (Lab. Code, § 1771.) The prevailing wage law is designed to benefit employees on public works projects by, among other things, protecting them from the substandard wages that might otherwise be paid if contractors could hire cheaper out-of-market labor. (*City of El Centro v. Lanier* (2016) 245 Cal.App.4th 1494, 1501.)

Labor Code section 1777.5 is the provision of the prevailing wage law governing apprentice employment. (*Southern California Cement Masons Joint Apprenticeship Committee v. California Apprenticeship Council* (2013) 213 Cal.App.4th 1531, 1536 (*Cement Masons*).) Labor Code section 1777.5 promotes apprenticeship by requiring contractors who hire workers in any "apprenticeable craft or trade" to also hire a certain number of apprentices.[2] (*Henson v. C. Overaa & Co.* (2015) 238 Cal.App.4th 184, 189 (*Henson*); *Cement Masons, supra*, at pp. 1536-1537; Lab. Code, § 1777.5, subds. (d), (g), (i).) For contractors, the major benefit of hiring apprentices is that they can pay them a special "apprentice wage" rate, which is typically lower than the journey-level prevailing wage rate. (Lab. Code, § 1777.5, subd. (b)(1); *Henson, supra*, at p. 189; *Associated Builders & Contrs. of S. Cal. v. Nunn* (9th Cir. 2004) 356 F.3d 979, 983.) Only registered apprentices from approved apprenticeship programs are eligible to receive the

---

[2] " 'Apprenticeable craft or trade' . . . means a craft or trade determined as an apprenticeable occupation in accordance with rules and regulations prescribed by the California Apprenticeship Council." (Lab. Code, § 1777.5, subd. (d).)

3

lower wage rates, and the employment and training of each such apprentices must be "in accordance with" either (1) the apprenticeship standards and agreements under which he or she is training, or (2) the rules and regulations of the California Apprenticeship Council (the Council). (Lab. Code, § 1777.5, subd. (c).)

Oversight of apprenticeship standards and programs is vested in two entities within the Department of Industrial Relations: The Division of Apprenticeship Standards and the Council. (*Henson, supra*, 238 Cal.App.4th at pp. 189-190.) The Division's responsibilities include administering the apprenticeship law and investigating standards for apprenticeship programs. (*Henson,* at p. 190; Lab. Code, §§ 3073, 3075, 3090.) The Council's responsibilities include issuing rules and regulations establishing apprenticeship standards for minimum wages, maximum hours, and working conditions in the building and construction trades. (*Henson,* at p. 190; Lab. Code, §§ 3070, 3071, subd. (a).) The Council is expressly empowered by statute to promulgate regulations interpreting the substantive requirements of Labor Code section 1777.5 and defining what is an "apprenticeable occupation" for purposes of that statute. (Lab. Code, §§ 1777.5, subd. (d), 1777.7, subd. (g).)

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a challenge to the Council's amendments to regulations pertaining to the employment of registered apprentices on public works projects (Notice of Approval of Regulatory Action, Off. of Adm. Law, Matter No. 2021-0222-02 (Aug. 6, 2021), amending Cal. Code of Regs., tit. 8, § 202 et seq. (the Regulations). As relevant here, the amendments made two changes intended to "clarify and make more specific" the substantive requirements for apprentices to qualify for payment of "apprentice wages" under Labor Code section 1777.5. The first was to revise the definition of " 'Apprenticeable Occupation' " in section 205, subdivision (c) of the Regulations to expressly tie that definition to "the work processes contained in the approved

4

apprenticeship standards under which [the] apprentices are training."[3] (Cal. Code Regs., tit. 8, § 205, subd. (c).) The second was to amend section 230.1, subdivision (c) of the Regulations to require that contractors only assign registered apprentices work that is included in the apprenticeship standards under which such apprentices are training, and not any other work. (Cal. Code Regs., tit. 8, § 230.1, subd. (c).) To qualify for the special "apprentice wage" rate under the revised Regulations, a registered apprentice must be performing work that is part of the work processes specifically enumerated in the apprentice's approved training program.

The Council's initial statement of reasons for the Regulations explained that the purpose of the amendments was to "ensure that the work performed by apprentices on public works is a genuine part of their training program leading to journey-level status, and conversely that apprentices will not be used as a source of cheap labor for work processes that are not part of their structured and approved training program."

Plaintiffs filed three separate petitions/complaints challenging the validity of the Regulations. The petitions generally alleged that the Regulations were invalid because the Council exceeded its statutory rulemaking authority and because it failed to comply with the procedural requirements of the Administrative Procedure Act (Gov. Code, § 11340 et seq.) (APA). The trial court ordered the three cases related.

In September 2021, some of the plaintiffs filed motions for preliminary injunctions seeking to enjoin the Regulations. The trial court subsequently approved joint stipulations staying the effect of the Regulations during the pendency of the litigation.

Movants in this matter consist of a group of apprenticeship committees that operate apprenticeship programs and individual apprentices enrolled in apprenticeship programs. On November 24, 2021, Movants filed a motion to intervene as defendants in

---

[3] The challenged Regulations also add new definitions for the terms " 'Work process' " and " 'Registered Apprentice.' " (Cal. Code Regs., tit. 8, § 205, subd. (p), (q).)

5

the three related cases. Movants argued that they had a mandatory right to intervene under section 387, subdivision (d)(1)(B) because (1) they have an interest in the benefits of the Regulations (2) that would be impaired if the Regulations were invalidated and (3) their interest is not adequately represented by the existing parties. Alternatively, Movants argued they should be granted permission to intervene under section 387, subdivision (d)(2).

Although the Council filed a "Statement in Support" of the requested intervention, the trial court denied the intervention motion. The trial court reasoned that Movants were not entitled to mandatory intervention because their interest was adequately represented by the Council. The court further concluded that permissive intervention was not appropriate because it would enlarge the issues in the case and because their reasons for intervention did not outweigh the opposing reasons of the existing parties. Movants timely appealed the orders denying their intervention motion.

## DISCUSSION

Movants contend the trial court erred in denying their motion for mandatory or permissive intervention. We disagree.

### I

### *Mandatory Intervention*

A.  *Legal Principles*

In the absence of a statute conferring an unconditional right to intervene, mandatory intervention is governed by section 387, subdivision (d)(1)(B). Under that section, to establish a right to mandatory intervention, a proposed intervenor must (upon timely application) establish that (1) it has an interest relating to the property or transaction that is the subject of the action, (2) the disposition of the action may impair or impede its ability to protect that interest, and (3) the party is not adequately represented by one or more existing parties. (§ 387, subd. (d)(1)(B); *Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*); *Carlsbad Police Officers Assn.*

6

*v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 148; *Accurso v. In-N-Out Burgers* (2023) 94 Cal.App.5th 1128, 1136-1138 (*Accurso*), review granted, Nov. 29, 2023, S282173, briefing deferred.)  Failure to satisfy any one of these requirements defeats intervention. (§ 387, subd. (d)(1)(B); *Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078, 1083 (*Arakaki*); *Perry v. Proposition 8 Official Proponents* (9th Cir. 2009) 587 F.3d 947, 950 (*Perry*).)

In evaluating these requirements, we may take guidance from federal court decisions.  (*Edwards, supra*, 29 Cal.App.5th at p. 732.)  Because section 387, subdivision (b) is " 'in substance an exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure,' " California courts have concluded the Legislature must have intended it to be interpreted consistently with cases interpreting the federal rule.  (*Edwards,* at p. 732; *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 556 (*Hodge*).)

To satisfy the threshold "interest" test, the United States Supreme Court has stated that the proposed intervener must have a "significantly protectable interest" that relates to the subject of the action.  (*Donaldson v. United States* (1971) 400 U.S. 517, 531 [27 L.Ed.2d 580, 589], superseded by statute on other grounds as stated in *Polselli v. Internal Revenue Service* (2023) 598 U.S. 432, 444 [215 L.Ed.2d 410]; *Arakaki, supra*, 324 F.3d at p. 1084; see *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1424.)  The interest in the litigation must be direct and immediate, rather than contingent or consequential, such that the moving party " ' "will either gain or lose by the direct legal operation and effect of the judgment." ' [Citation.]"  (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1037.)

The second element, impairment, is related to the existence of a significantly protectable interest.  (*Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Com.* (10th Cir. 1978) 578 F.2d 1341, 1345.)  When a proposed intervenor establishes a substantial legal interest in an action, courts generally will have little difficulty concluding that the disposition of the action may, as a practical matter, impair

or impede that interest. (See *State ex rel. Lockyer v. United States* (9th Cir. 2006) 450 F.3d 436, 442.)[4] But even if a proposed intervenor has a protectable interest that may be impaired or impeded, a court will not grant mandatory intervention if an existing party adequately represents that interest. (§ 387, subd. (d)(1)(B).)

In evaluating the adequacy of representation, federal courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." (*Arakaki, supra*, 324 F.3d at p. 1086.) "The most important factor . . . is how the [proposed intervenor's] interest compares with the interests of existing parties." (*Ibid*., citation omitted.)

Typically, a party moving to intervene need only show there is a significant possibility that representation of its interest by existing parties " 'may be' " inadequate. (*United States v. City of Los Angeles* (9th Cir. 2002) 288 F.3d 391, 398; *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College (Harvard Corp.)* (1st Cir. 2015) 807 F.3d 472, 475.) However, when the movant and an existing party share the same interest in the litigation, or the movant seeks to defend a law alongside a government defendant, a presumption of adequacy arises, and a compelling showing is required to demonstrate inadequate representation. (*Callahan v. Brookdale Senior Living Cmtys., Inc*. (9th Cir. 2022) 42 F.4th 1013, 1020-1021 (*Callahan*); *Prete v. Bradbury* (9th Cir. 2006) 438 F.3d 949, 957 (*Prete*); *Arakaki, supra*, 324 F.3d at p. 1086.) When the parties share the same ultimate objective, mere differences in litigation strategy or legal

---

[4] The most notable exception is when the proposed intervenor has an alternative forum or other means to protect its interest. (See *State ex rel. Lockyer v. United States, supra*, 450 F.3d at p. 442; *Hodge, supra*, 130 Cal.App.4th at pp. 550-554.)

8

tactics are not enough to justify intervention. (*Callahan, supra*, 42 F.4th at p. 1021; *Perry, supra*, 587 F.3d at p. 954.)

While courts have recognized that the requirements of section 387 should be liberally construed in favor of intervention, the moving party bears the burden of proving entitlement to intervene as a party. (*Accurso, supra*, 94 Cal.App.5th at p. 1137, review granted.)

The standard of review for an order denying mandatory intervention is unsettled, with some courts suggesting de novo review and others abuse of discretion. (*Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 976, review granted Jan. 5, 2022, S271721, fully briefed.) We conclude de novo review is the appropriate standard. We reach this conclusion because the question is predominantly legal and because we find the de novo standard more consistent with the legislative intent behind a *mandatory* right of intervention. (*Accurso, supra*, 94 Cal.App.5th at pp. 1136, 1139-1141, review granted; *Perry, supra,* 587 F.3d at p. 950; see *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 271.)

B.    *Analysis*

Movants argue the trial court erred in denying their motion for mandatory intervention because they have a legally protectable interest as "beneficiaries" of the challenged Regulations; their interest would be impaired by a decision invalidating the Regulations; and their interest is not adequately represented by the existing parties. We are not persuaded. We agree with the trial court's decision to deny mandatory intervention because Movants failed to show their interest in the litigation was not adequately represented by the Council.

First, because Movants and the Council share the same interest in defending the Regulations, a presumption of adequacy of representation applies. (See, e.g., *Arakaki, supra*, 324 F.3d at pp. 1086-1087; *Callahan, supra*, 42 F.4th at p. 1021, fn. 5.) To

9

overcome this presumption, Movants were required to make a compelling showing that the Council's representation would be inadequate. (*Callahan,* at p. 1021, fn. 5.)

Citing *Berger v. N.C. State Conference of the NAACP* (2022) 597 U.S. 179 [213 L.Ed.2d 517] (*Berger*), Movants argue that the presumption of adequacy should not apply because Movants' interest in the Regulations, while similar, is not identical to that of the Council. In particular, Movants contend their interest is more " 'narrow and parochial,' " representing only the apprentices and apprenticeship programs that support the Regulations, whereas the Council has a broader interest in defending its statutory rulemaking authority.

Movants' reliance on *Berger, supra*, 597 U.S. 179 [213 L.Ed.2d 517] is misplaced. *Berger* expressly did not decide "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." (*Id*. at p. 197 [213 L.Ed.2d at p. 533].) It simply held that such a presumption is inappropriate under the facts in that case, where "a duly authorized state agent seeks to intervene to defend a state law." (*Ibid*.)

In any event, we are not convinced there is any meaningful divergence between Movants' and the Council's interests with respect to the subject of this action. The questions presented in the action are whether the Council exceeded its statutory rulemaking authority or failed to comply with the APA's procedural requirements in enacting the Regulations. Movants have failed to show that there is any divergence or potential divergence of interests with respect to these issues. While the Council may have been statutorily required to balance broader interests when it was crafting the Regulations, the Council's interest in this litigation is singular and narrow: to defend and uphold the Regulations. For Movants, it is the same.[5] (*Perry, supra*, 587 F.3d at

---

[5] Movants claim an interest in upholding the Regulations because they want to achieve the regulatory benefits that the Regulations will provide, namely expanded

10

pp. 951-952; *Prete, supra*, 438 F.3d at p. 957; *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (9th Cir. 2020) 960 F.3d 603, 620 (*Oakland Bulk*); see *Washington Electric Coop., Inc. v. Massachusetts Municipal Wholesale Electric Co*. (2d Cir. 1990) 922 F.2d 92, 98.)

Because a presumption of adequacy applies, Movants may only intervene as of a right upon a compelling showing of inadequacy of representation. Movants failed to meet that burden. As discussed, when evaluating the adequacy of representation, courts consider three factors: (1) whether the interest of the existing party is such that it will undoubtedly make all the proposed intervenor's arguments; (2) whether the current parties can and will make those arguments; and (3) whether the intervenor offers a necessary element to the proceedings that otherwise would be neglected. (*Arakaki, supra*, 324 F.3d at p. 1086.) In support of their motion, Movants made no attempt to address either of the first two factors.[6] Movants simply argued that representation should be deemed inadequate because their interests were "qualitatively different" and " 'more narrow and parochial' " than the Council. But Movants never explained *why* the Council's status precludes effective representation of their interest in defending the Regulations. (See *Public Serv. Co. v. Patch* (1st Cir. 1998) 136 F.3d 197, 207-208.) Movants did not offer any evidence to suggest that the Council would give Labor Code section 1777.5 a narrower construction or that it would not mount a complete defense of its own Regulations. Nor did they identify any argument that the Council would be

---

opportunities for on-the-job training and protection from exploitation as a source of cheap labor. This tracks the stated purpose of the Regulations, which Movants helped formulate.

[6] Our review is limited to the evidence before the court at the time of the ruling on the motion; we need not and do not address claims based on events occurring after the court's ruling. (*Scates v. Rydingsword* (1991) 229 Cal.App.3d 1085, 1096.)

11

incapable or unwilling to make.[7] (*Ibid*.) As a result, there was no tangible basis—beyond speculation and conjecture—to support their claim of inadequate representation. (*Public Serv. Co. v. Patch, supra*, 136 F.3d at p. 207.)

As for the third factor, Movants suggested—in a single sentence in their brief—that they could "augment" the Council's defense because they "possess significant experience in apprenticeship training and particular knowledge about the evils that the Regulations were meant to address." However, the court rejected a similar argument in *Prete, supra*, 438 F.3d 949, concluding that specialized experience or knowledge is insufficient to demonstrate inadequacy of representation without showing the existing party lacked comparable experience or knowledge. (*Id*. at pp. 958-959; accord, *Oakland Bulk, supra*, 960 F.3d at p. 621.) In any event, what matters for adequacy of representation is whether Movants have specialized knowledge or experience relevant to the issues raised in the action. Movants never explained how their specialized experience and knowledge would add a new, necessary perspective on the Council's authority to adopt the Regulations or its compliance with APA requirements. Movants suggested nothing that they would bring to the proceedings which the Council, "in its own interest, would not be equally motivated to urge." (*Dilks v. Aloha Airlines, Inc.* (9th Cir. 1981) 642 F.2d 1155, 1157.) Speculation about possible differences in litigation strategy based on the notion that the Council represents "broader" governmental interests is not enough to justify intervention as of right. (*Perry, supra*, 587 F.3d at p. 954; *Daggett v. Commission on Governmental Ethics & Election Practices* (1st Cir. 1999) 172 F.3d 104, 112 [general notion that government-defendant represents broader interests at some abstract level is insufficient]; see *Massachusetts Food Ass'n v. Massachusetts Alcoholic*

---

[7] We decline to consider Movants' argument that the Council's decision to stipulate to a stay shows a divergence of interests. Movants forfeited this argument by failing to raise it below. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

*Bevs. Control Comm'n* (1st Cir. 1999) 197 F.3d 560, 567 [rejecting notion that state defendant's representation is inadequate simply because it regulates the entity seeking to intervene].)

Movants failed to show why the government would not adequately represent their interest in these cases. Accordingly, the trial court properly denied their request for mandatory intervention.

## II

### *Permissive Intervention*

We next turn to the question of whether the trial court improperly denied Movants' request for permissive intervention.

Permissive intervention is governed by section 387, subdivision (d)(2), which provides in pertinent part, "The court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." (§ 387, subd. (d)(2).) "Under this provision, ' "the trial court has discretion to permit a nonparty to intervene where the following factors are met: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. [Citation.]" ' [Citations.]" (*Edwards, supra*, 29 Cal.App.5th at p. 736.)

"The trial court must balance the interests of those affected by a judgment against the interests of the original parties in pursuing their case unburdened by others. [Citation.] The trial court has broad discretion to strike this balance. [Citation.] We thus review for abuse of discretion. [Citation.]" (*South Coast Air Quality Management Dist. v. City of Los Angeles* (2021) 71 Cal.App.5th 314, 320 (*South Coast Air*).) We will disturb an exercise of that discretion only in the rare case when the court exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of

13

justice. (*Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1434; see *McHenry v. Comm'r* (4th Cir. 2012) 677 F.3d 214, 219 [reversal of a decision denying permissive intervention is extremely rare].) We will presume the court's judgment is correct and indulge all reasonable intendments and presumptions in favor of affirmance. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) The burden of demonstrating error rests on the appellant. (*Ibid*.)

We find no abuse of discretion here. Even if we assume the other factors are met—proper procedures were followed, the movant has an interest in the action, and intervention will not enlarge the issues—we affirm based on the finding that the Movants' reasons for intervention are outweighed by the rights of the existing parties to conduct the lawsuits on their own terms.

In *South Coast Air, supra,* 71 Cal.App.5th at page 314, the Second Appellate District concluded that the trial court properly exercised its discretion in denying a union's motion to intervene in an environmental dispute concerning the Port of Los Angeles because the union's participation would have been "largely cumulative and would unduly complicate an already complicated case." (*Id*. at p. 321.) Similar considerations apply here. The trial court reasonably could have concluded that Movants' interest in defending the Regulations was adequately represented by the Council and that Movants' participation would be largely cumulative and unduly distracting. Thus, the trial court's decision to deny permissive intervention was within the bounds of reason.[8] (*South Coast Air,* at p. 322; see *Coalition for Fair Rent v. Abdelnour* (1980) 107 Cal.App.3d 97, 116 [affirming denial of permissive

---

[8] Our decision in *People ex rel. Rominger v. County of Trinity* (1983) 147 Cal.App.3d 655, does not compel a contrary conclusion. This case is distinguishable from *Rominger* because the proposed intervenors, in that case, alleged such a compelling and discrete interest in the outcome of the litigation, separate from the defendant county, that denying intervention would be a clear abuse of discretion. (*Id*. at pp. 660-661, 665.) Movants made no similar showing here.

14

intervention where there was "no difference" in the positions of the proposed intervenor and the respondent]; *Ziani Homeowners Assn. v. Brookfield Ziani LLC* (2015) 243 Cal.App.4th 274, 282 ["Intervention is not necessary or desirable when the intervener's interests are adequately represented, as it would serve only to complicate and delay the litigation for no good reason."])

## DISPOSITION

The order denying the motion to intervene is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), & (2).)

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Duarte, Acting P. J.

_____\s\_____,
Renner, J.

15